IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

<table>
<tr><td>JOSE DILONE,</td><td>*</td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>Plaintiff,</td><td>*</td><td></td></tr>
<tr><td>v.</td><td>*</td><td>Case No.: PWG-18-1018</td></tr>
<tr><td>KIRSTJEN NIELSEN et al.,</td><td>*</td><td></td></tr>
<tr><td>Defendants.</td><td>*</td><td></td></tr>
</table>

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Jose Dilone wants to become a U.S. citizen. He applied for naturalization through the ordinary channels in December 2016, but after waiting nearly a year and a half for the Department of Homeland Security ("DHS") to render a decision, he opted to seek recourse in the courts. His suit urges this Court to exercise its authority under 8 U.S.C. § 1447(b), either by adjudicating the application itself or by ordering DHS to approve it.

Defendants, who include the Secretary of Homeland Security, do not deny that the Court had jurisdiction over Mr. Dilone's Complaint when he first filed it in April 2018. They contend, though, that the case became unsustainable soon afterward, when the agency placed Mr. Dilone into removal proceedings. Their legal argument, in brief, is that 8 U.S.C. § 1429 prevents both the agency and the courts from considering a naturalization application while removal proceedings are pending.

Not so. Section 1429 very clearly precludes DHS from acting on a naturalization application while the applicant is facing removal, but it does not say anything about the courts.

1

Because I decline to construe a statute in a manner that conflicts with its unambiguous terms, *see*

*Yith v. Nielsen*, 881 F.3d 1155, 1161 (9th Cir. 2018), I conclude that this Court has jurisdiction

over Mr. Dilone's Complaint and has the authority to grant the relief he seeks.

But allowing this case to proceed while removal proceedings remain ongoing would depart

from a longstanding policy of giving such proceedings "priority" over the naturalization process.

*See Zayed v. United States*, 368 F.3d 902, 905 (6th Cir. 2004). As it is not at all clear to me that

Congress intended to upend this policy, I am staying this case to allow the removal proceedings to

run their course, while retaining authority to reopen the case in the event that those proceedings

are not completed in a timely manner. To assist me in monitoring the progress of the removal

proceedings, and to ensure that the government pursues its removal case in a non-dilatory fashion,

I will require it to provide me with status reports every 45 days, commencing the date of this

memorandum opinion and order.

## FACTUAL BACKGROUND

The facts of this case are undisputed and do not require much elaboration. The suit began

with four plaintiffs – all lawful permanent residents of the United States – seeking to compel a

decision on their long-pending applications for American citizenship. *See* Compl. ¶¶ 1-2, ECF

No. 1. Three of the plaintiffs moved for a voluntary dismissal of their claims after U.S. Citizenship

and Immigration Services ("USCIS") agreed to adjudicate their applications within 30 days. *See*

ECF No. 7. The Court granted their motion, *see* ECF No. 8, leaving Mr. Dilone as the sole

remaining plaintiff.

Mr. Dilone, a native of the Dominican Republic, became a lawful permanent resident of

the United States on October 30, 1992, at the age of 16. Compl. ¶ 9, ECF No. 1. He applied for

naturalization in December 2016. *Id.* ¶ 10. USCIS agents interviewed him on May 17, 2017, at

the agency's district field office in Baltimore. *Id.* ¶ 11. When the interview was over, the agents informed him that he had passed the English and civics tests but that they were not prepared at that time to make a decision about his application. *Id.* ¶ 12.

Three hundred and twenty-eight days later, still waiting for the agency to issue a decision, Mr. Dilone filed this federal lawsuit. The Complaint, which named Homeland Security Secretary Kirstjen Nielsen and other federal officials as defendants,[1] framed the suit as a mandamus action under 28 U.S.C. § 1361 to compel federal officers to uphold their duty to adjudicate his Form N-400 application for naturalization. *See id.* ¶ 6. It further asserted that the Court had jurisdiction over the naturalization proceedings under 8 U.S.C. § 1447(b) because USCIS had failed to render a decision within 120 days of Mr. Dilone's examination. *See* 8 U.S.C. § 1447(b). This provision, where properly invoked, empowers a district court to "determine the matter or remand the matter, with appropriate instructions," to USCIS. *Id.*

On May 24, 2018 – right around the time USCIS agreed to process the other three plaintiffs' naturalization applications in exchange for a voluntary dismissal of their claims – DHS agents served Mr. Dilone with a notice to appear for removal proceedings in immigration court. *See* Notice to Appear, ECF No. 12-2. The notice alleged he was removable because of his criminal record, which included a 1996 conviction in a Virginia circuit court for grand larceny and possession of burglary tools and a 2000 conviction in Maryland district court for conspiracy to commit theft (less than $300). *See id.* at 5. The notice categorized these offenses as "crimes involving moral turpitude" and deemed him removable under 8 U.S.C. § 1227(a)(2)(A)(i) and § 1227(a)(2)(A)(ii). *See id.*

---

[1] The other defendants are USCIS Director L. Francis Cissna and USCIS Baltimore District Office Director Gregory Collett.

Mr. Dilone was released from DHS custody on a $5,000 bond on June 6, 2018. ECF No. 8. Two days later, Defendants asked this Court for leave to file a motion to dismiss the Complaint. *Id.* Its ensuing motion argued that the initiation of removal proceedings stripped the Court of any jurisdiction it might have had under § 1447(b). *See* Mot. to Dismiss 1-2, ECF No. 12. Defendants reasoned that § 1447(b) was no longer applicable because a different statutory provision, 8 U.S.C. § 1429, precludes the Attorney General from considering a naturalization application while removal proceedings are pending against the applicant. Section 1429 does not expressly bar a *court* from reviewing the application under these circumstances, but Defendants argued that allowing a court to do what DHS cannot would defeat the purpose of § 1429, which was to prevent aliens from evading deportation by seeking and obtaining citizenship before removal proceedings have run their course. *See* Defs.' Mem. 9-11, ECF No. 12-1. Defendants contend that even if § 1429 does not deprive the Court of jurisdiction, it leaves the Court powerless to accord any relief under the circumstances.

The Motion to Dismiss has been fully briefed. *See* ECF Nos. 12, 13, 14. No hearing is necessary. *See* Loc. R. 105.6.

## STANDARD OF REVIEW

Defendants seek a dismissal under either Rule 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure. A 12(b)(1) motion challenges the district court's subject matter jurisdiction, asserting, in effect, that the plaintiff lacks any "right to be in the district court at all." *Holloway v. Pagan River Dockside Seafood, Inc.*, 669 F.3d 448, 452 (4th Cir. 2012). The burden of establishing the court's subject matter jurisdiction rests with the plaintiff. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The district court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."

4

*Balfour Beatty Infrastructure, Inc. v. Mayor & City Council of Balt.*, 855 F.3d 247, 251 (4th Cir. 2017) (quoting *Evans*, 166 F.3d at 647).

A 12(b)(6) motion, by contrast, "tests the sufficiency" of the plaintiff's complaint. *Vance v. CHF Int'l*, 914 F. Supp. 2d 669, 677 (D. Md. 2012). Under Rule 8(a)(2), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Beyond that, the Supreme Court has held that claims for relief must be "plausible," specifying that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

## DISCUSSION

Defendants' motion raises three distinct issues for this Court to decide. First, does the Court have subject matter jurisdiction over Mr. Dilone's claim? Second, assuming jurisdiction does exist, is the claim redressable? And finally, assuming the claim survives the motion to dismiss, how should this case proceed?

These three questions are closely related. To answer any of them, it is necessary to examine the interplay between two processes: naturalization and removal. As the laws that govern these processes have evolved over time, some history would seem to be in order.

### A.

Today, the primary responsibility for deciding who may become a U.S. citizen and who is to be removed from the country is centralized in the executive branch. By statute, the "sole authority to naturalize persons as citizens of the United States" rests with the Secretary of

Homeland Security.[2] 8 U.S.C. § 1421(a); 6 U.S.C. § 557. Removal proceedings, meanwhile, are conducted by immigration judges appointed by the Attorney General. *See id.* §§ 1229a(a)(1), 1101(b)(4). To the extent that courts may concern themselves with these matters, their role is mainly to provide judicial review of the executive agency's actions. *See id.* § 1421(c) (authorizing an applicant for naturalization to seek judicial review of a decision denying his application); *id.* § 1252(a)(1) (authorizing judicial review of a final order of removal).

It was not always this way, though. For much of the twentieth century, responsibility for removal and naturalization was split between the judicial and executive branches. While the Attorney General wielded authority over deportations, courts played the "pre-eminent role in the naturalization process," bearing the ultimate responsibility for deciding whether to grant or deny an alien's petition for naturalization. *United States v. Ali*, 757 F. Supp. 710, 712 (W.D. Va. 1991). The courts did not make these determinations in isolation, of course, but rather considered input from the U.S. Department of Justice, whose agents "conducted the preliminary investigation and examination of applicants and made recommendations to the district court." *Ajlani v. Chertoff*, 545 F.3d 229, 236 n.5 (2d Cir. 2008).

One aspect of this division of labor that came to be seen as problematic was that neither proceeding had priority over the other. Consequently, an alien could find himself in a race against the government, with the alien pressing the court to grant him citizenship before the government could order his removal from the country. *See Shomberg v. United States*, 348 U.S. 540, 544

---

[2] By its express terms, 8 U.S.C. § 1421(a) confers authority upon the Attorney General. *See* 8 U.S.C. § 1421(a). However, the Homeland Security Act of 2002 transferred many of the Department of Justice's immigration-related functions to DHS, including the task of adjudicating naturalization applications. *See Yith v. Nielsen*, 881 F.3d 1155, 1158 (9th Cir. 2018). Statutory references to powers previously held by the Attorney General are deemed to refer to Secretary of Homeland Security. *See* 6 U.S.C. § 557; *United States v. Lopez-Collazo*, 824 F.3d 453, 456 n.1 (4th Cir. 2016).

(1955). Congress put an end to these races in 1950, amending the immigration laws to provide in relevant part: "[N]o petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest issued under the provisions of this or any other Act . . . ." Internal Security Act of 1950, Pub. L. No. 81-831, § 27, 64 Stat. 987, 1015 (1950).[3] The Supreme Court characterized this provision as a "priority provision," because it ensured that deportation proceedings would take precedence over an alien's attempts to naturalize. *Shomberg*, 348 U.S. at 544.

The priority provision remained intact until 1990, when Congress sought to address an altogether different problem with naturalization proceedings – specifically, the stress they were putting on district courts' dockets. *See Etape v. Chertoff*, 497 F.3d 379, 386 (4th Cir. 2007). To streamline the naturalization process, Congress shifted authority from the judiciary to the executive branch, authorizing the Attorney General to naturalize citizens without the courts' involvement. *See* 8 U.S.C. § 1421(a); *Yith*, 881 F.3d at 1162.

The Immigration Act of 1990 declared that the Attorney General has "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a). But Congress did not eliminate the courts' role entirely. Rather, in recognition of "the long-standing power the district courts had possessed over naturalization applications," *Etape*, 497 F.3d at 386, the law "reserved a measure of naturalization jurisdiction for the courts in two circumstances: denial and delay," *Ajlani*, 545 F.3d at 236.

The first of the courts' two sources of authority in this arena, codified at 8 U.S.C. § 1421(c), empowers courts to review USCIS's denial of an application for naturalization. Under the

---

[3] This provision was reenacted in the Immigration and Nationality Act of 1952 and later codified at 8 U.S.C. § 1429.

statutory scheme, a person whose application is denied must first request a hearing before an immigration officer. *See* 8 U.S.C. § 1446(d); 8 C.F.R. §§ 316.14(b)(2), 336.2. If, after the hearing, the denial still stands, the applicant "may seek review of such denial before the United States district court for the district in which [he or she] resides." 8 U.S.C. § 1421(c). The statute provides: "Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law . . . ." *Id.*

The other source of judicial authority – the one Mr. Dilone seeks to invoke here – is 8 U.S.C. § 1447(b). It allows an applicant to seek recourse in the federal courts if his application remains pending for at least 120 days after USCIS examined him. 8 U.S.C. § 1447(b). More particularly, the statute provides:

> If there is a failure to make a determination . . . before the end of the 120-day period after the date on which the examination is conducted . . . , the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.

*Id.* The court "has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter." *Id.*

The 1990 act largely retained section 1429's restrictions on eligibility for naturalization but amended the "priority provision," substituting the "Attorney General" in place of the lone reference to "naturalization courts." *See Zayed*, 368 F.3d at 905. The amended provision, which remains on the books today, reads: "[N]o application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest . . . ." 8 U.S.C. § 1429.

## B.

In cases like this, where the defense seeks dismissal on both jurisdictional and non-jurisdictional grounds, it usually makes sense for the court to decide the jurisdictional question

first, as this question "concern[s] the court's very power to hear the case." *Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 599 (D. Md. 2014) (quoting *Owens-Ill., Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999)); *see Upstate Forever v. Kinder Morgan Energy Partners, L.P.*, 887 F.3d 637, 645 (4th Cir. 2018). My analysis, accordingly, begins with this issue.

1.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Hagans v. Lavine*, 415 U.S. 528, 538 (1974). The question Defendants have presented is whether the Court has statutory jurisdiction over Mr. Dilone's Complaint.

There does not appear to be any question that this Court enjoyed statutory jurisdiction under § 1447(b) when Mr. Dilone first filed suit on April 9, 2018. Section 1447(b) allows an applicant to invoke a federal court's jurisdiction when USCIS has failed to either grant or deny his application "before the end of the 120-day period after the date on which" a USCIS officer examined him. 8 U.S.C. § 1447(b). The defense has not disputed that the 120-day period passed long before this lawsuit commenced. *See* Mot. to Dismiss 1, ECF No. 12. As a consequence of the agency's delay, Mr. Dilone was free to apply for a hearing in this Court, and once he did, the Court indisputably "ha[d] jurisdiction over the matter." *Id.*

Defendants' contention, effectively, is that the Court *lost* its jurisdiction over this case when DHS placed Mr. Dilone into removal proceedings in May 2018. They argue that 8 U.S.C. § 1447(b) is no longer applicable because § 1429 "precludes USCIS and the Court from considering Plaintiff's naturalization application while his removal proceeding is pending." Defs.' Mem. 2.

But it is up to Congress, not the Attorney General or the Secretary of DHS, to establish the subject-matter jurisdiction of the federal district courts, *see Bowles v. Russell*, 551 U.S. 205, 212-13 (2007), a task it performs in the ordinary way: by enacting statutes. Courts recognize Congress's "prerogative" to expand or restrict their jurisdiction. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 n.11 (2006). Observing, though, that courts and litigants benefit from well-defined jurisdictional limits, the Supreme Court has promulgated a "'readily administrable bright line' rule" for determining whether statutory language is jurisdictional. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011) (quoting *Arbaugh*, 546 U.S. at 516). Under this rule, a court looks for some "'clear' indication that Congress wanted" the statutory terms to be jurisdictional. *Id.*; *Klene v. Napolitano*, 697 F.3d 666, 668 (7th Cir. 2012).

Section 1447(b) plainly is a jurisdictional statute. This is apparent on its face, which explicitly states that upon the filing of an application for a hearing, the district court "has jurisdiction over the matter." 8 U.S.C. § 1447(b). Section 1429, by contrast, bears none of the same hallmarks. It contains no direct reference to the courts. And while the provision expressly precludes the *Attorney General* from considering a naturalization application while removing proceedings are pending, it is entirely silent about the courts' authority under these same circumstances. These are not the makings of a jurisdiction-limiting statute. *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 852 (7th Cir. 2012) (en banc) ("When Congress decides to strip the courts of subject-matter jurisdiction in a particular area, it speaks clearly.").

On this issue, the federal appellate courts have not disagreed.[4] Of the two circuit courts to have decided the issue (the Sixth and Ninth), both have conclude that whatever effect § 1429 might

---

[4] The Fourth Circuit Court of Appeals has not had occasion to rule on this issue. However, one lower court judge in this district has dismissed a § 1447(b) claim on jurisdictional grounds. *See Morse v. Napolitano*, No. JFM 09-231, 2009 WL 2634557 (D. Md. Aug. 19, 2009). The judge's

have on a court's consideration of a naturalization application under § 1447(b), it is not jurisdictional.[5] *See Yith*, 881 F.3d at 1161; *Rahman v. Napolitano*, 385 F. App'x 540, 544 (6th Cir. 2010).

I am of the same mind. Section 1447(b) indisputably vests this Court with subject-matter jurisdiction, and there is no indication, much less a "clear" one, that Congress intended for the commencement of removal proceedings to wrest it away.[6] I agree with Mr. Dilone that I have jurisdiction over his Complaint, and I will now consider what that power amounts to under the circumstances presented here.

2.

The next question is whether Mr. Dilone has stated a claim upon which relief may be granted. Defendants argue he has not, asserting that under § 1429, the commencement of removal proceedings bars a district court from according relief under § 1447(b).

---

memorandum opinion in that case runs just a few sentences and is decidedly short on explication. It essentially reasons that because § 1429 "prohibits the Attorney General from acting on a naturalization application while removal proceedings are pending," the court is likewise "precluded from granting the relief plaintiff seeks." *Id.* This rationale, were I to accept it, would seem to support a dismissal for failure to state a claim under Rule 12(b)(6). In my view, though, it does not speak to the issue of subject matter jurisdiction.

[5] Two other circuit courts of appeal (the Second and Fifth) touched on the question but did not decide it. In *Ajlani v. Chertoff*, the Second Circuit assumed the district court retained jurisdiction under § 1447(b), in spite of pending removal proceedings, because the defendants were not challenging the court's jurisdiction. 545 F.3d 229, 237-38 (2d Cir. 2008). In *Saba-Bakare v. Chertoff*, the Fifth Circuit found it unnecessary to decide the jurisdictional issue because it concluded that "invoking jurisdiction under [§ 1447(b)] would be futile." 507 F.3d 337, 340 (5th Cir. 2007).

[6] Five federal appellate courts have considered the related question of whether the initiation of removal proceedings strips a court's statutory jurisdiction under § 1421(c) to review a DHS denial of a naturalization application. All of them have concluded it does not. *See Klene v. Napolitano*, 697 F.3d 666, 668 (7th Cir. 2012); *Awe v. Napolitano*, 494 F. App'x 860, 865 (10th Cir. 2012); *Gonzalez v. Sec'y of Homeland Sec.*, 678 F.3d 254, 258-59 (3d Cir. 2012); *De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1046 (9th Cir. 2004); *Zayed v. United States*, 368 F.3d 902, 906 (6th Cir. 2004).

A straight reading of the statutory text counsels against Defendants' position. Section 1429, as I have already noted, expressly bars the Attorney General from considering a naturalization application while removal proceedings are pending. 8 U.S.C. § 1429. The statutory prohibition used to apply to the courts, but Congress in 1990 deleted the term "naturalization court" and replaced it with "Attorney General." *De Lara Bellajaro v. Schiltgen*, 378 F.3d 1042, 1045 (9th Cir. 2004). In its current form, the statute does not refer to the courts at all.

Nevertheless, on this issue, there is a split of authority. The Ninth Circuit has adopted the textualist approach, holding that § 1429 merely blocks federal agents from considering an application for naturalization while removal proceedings are pending but does not preclude a district court from doing the same. *See Yith*, 881 F.3d at 1161. The Second, Fifth, and Sixth Circuits, by contrast, have concluded the preclusive effect of § 1429 applies to USCIS and the courts with equal force. *See Rahman*, 385 F. App'x at 544; *Ajlani*, 545 F.3d at 238-39; *Saba-Bakare v. Chertoff*, 507 F.3d 337, 340 (5th Cir. 2007). One district court in this circuit has followed those courts' lead, dismissing a naturalization applicant's § 1447(b) claim on the ground that the court could not grant any relief while removal proceedings were pending. *See Morse v. Napolitano*, No. JFM 09-231, 2009 WL 2634557 (D. Md. Aug. 19, 2009).

The decisions in the cases interpreting §1429 draw inferences from the case law interpreting § 1421(c), a related statutory provision that authorizes district courts to review USCIS decisions denying applications for naturalization. Because I am not as certain that those inferences stand up to scrutiny, I will pause a moment to discuss them.

a.

Section 1421(c) provides in part: "A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer . . . , may seek review of such

denial before [a] United States district court . . . ." 8 U.S.C. § 1421(c). The cases arising under this provision have raised similar questions about the implications of § 1429, as courts have had to consider what sort of relief, if any, they might be able to grant a naturalization applicant who has found himself in removal proceedings after USCIS denied his application.

Here, too, the federal appellate courts have not sung in perfect harmony. Of the four federal courts of appeals to rule on the issue,[7] two of them – the Third and Seventh Circuits – have concluded that § 1429 does not prevent the alien from seeking declaratory relief. *See Klene*, 697 F.3d at 669; *Gonzalez v. Sec'y of Homeland Sec.*, 678 F.3d 254, 259 (3d Cir. 2012). Another circuit court, the Sixth, did not rule out the possibility that a § 1421(c) petitioner might seek declaratory relief, but the petitioner in that case had not sought it. *See Zayed v. United States*, 368 F.3d 902, 906 (6th Cir. 2004). Accordingly, the court of appeals upheld the district court's decision to dismiss the petition, accepting the government's argument that no other relief was available. *See id.* at 907. The panel reasoned that the district court lacked authority under § 1421(c) to approve the application itself, and it could not have ordered the Attorney General to grant it so long as removal proceedings were pending, as § 1429 expressly bars the Attorney General from considering applications under those circumstances. *See id.* at 906.

---

[7] A fifth appellate court, the Ninth Circuit, discussed the interplay between § 1421(c) and § 1429, but the circumstances of that case did not require the panel to consider whether removal proceedings bar a petitioner's prayers for relief. In that case, *De Lara Bellajaro v. Schiltgen*, the Attorney General had denied the petitioner's naturalization application on the grounds that § 1429 precluded him from considering it while removal proceedings were pending. 378 F.3d 1042, 1043 (9th Cir. 2004). The Ninth Circuit determined the district court had jurisdiction under § 1421(c) to review the denial but held that the scope of the court's review was limited to the grounds the Attorney General had cited in the denial. *See id.* at 1046-47. The panel concluded, accordingly, that the only issue the district court could review under the circumstances was whether § 1429 was a proper basis for the denial, and because that issue was not in dispute, the court did not err in dismissing the case. *See id.* at 1043-44.

13

The Tenth Circuit reached a substantially similar conclusion, but for slightly different reasons. In *Awe v. Napolitano*, the Tenth Circuit declared that, as a general matter, removal proceedings "effectively bar federal consideration of § 1421(c) petitions by virtue of § 1429." 494 F. App'x 860, 865 (10th Cir. 2012). The panel concluded that a district court in those circumstances was powerless to accord any relief, declaratory or otherwise. *See id.* at 866. Consequently, it directed the district court on remand to dismiss the case as constitutionally moot. *See id.* at 861.

b.

This brings me back to the case law on the statutory provision at issue here, § 1447(b). The Second Circuit's opinion in *Ajlani v. Chertoff* draws heavily on the federal appellate courts' analysis of § 1421(c), purporting to "join" those courts in concluding "that the priority afforded removal proceedings by § 1429 limits the courts' authority to grant naturalization pursuant to § 1421(c) or § 1447(b)." 545 F.3d at 239. As I will explain, though, it seems to me that there are critical differences between the two statutory grants of jurisdiction.

Judging by the text of the two statutes, a court's authority under § 1421(c) is considerably narrower than its authority under § 1447(b). The former merely entitles a petitioner to judicial review of a federal agency's denial of a naturalization application. *See* 8 U.S.C. § 1421(c). The Ninth Circuit has noted that the statute specifically authorizes courts to review "such denial," and has inferred from this that the "scope" of the court's review must be "limited to the ground for the denial." *De Lara Bellajaro*, 378 F.3d at 1043-44; *see also Zayed*, 368 F.3d at 906 ("Where the [agency] has denied an application for naturalization on the ground that removal proceedings are pending, . . . the district court's de novo review [under § 1421(c)] is limited to review of that threshold determination.").

14

Section 1447(b) is not nearly as limiting. The power it expressly confers on district courts is not a narrow power to judicially review the reason the agency denied the application for naturalization. Rather, § 1447(b) states that the court "has jurisdiction over the *matter*." 8 U.S.C. § 1447(b). (emphasis added). The Fourth Circuit, among other courts, has construed this to mean that a properly filed petition under § 1447(b) empowers the district court to adjudicate a naturalization application, if it so chooses, when USCIS has failed to render a decision in a timely fashion. *See Etape*, 497 F.3d at 387 (stating that the 1990 amendments "specifically retained district courts' power to *adjudicate* naturalization applications (emphasis added)); *see also Yith*, 881 F.3d at 1163; *Bustamante v. Napolitano*, 582 F.3d 403, 407 (2d Cir. 2009); *United States v. Hovsepian*, 359 F.3d 1144, 1160 (9th Cir. 2004) (en banc).

*Aljani*[8] and the Fifth Circuit's decision in *Saba-Bakare* rightly observe that a district court exercising its authority under § 1447(b) while removal proceedings are pending may not remand the matter to the government with instructions to naturalize the applicant. This must be so, because § 1429 plainly bars DHS from considering an application under these circumstances, and a court may not order a federal agency to violate a valid statute. *See Awe*, 494 F. App'x at 866. But a

---

[8] *Ajlani* cites the Sixth Circuit's decision in *Zayed v. United States*, a § 1421(c) case, for the proposition that "district court authority to grant naturalization relief while removal proceedings are pending cannot be greater than that of the Attorney General." 545 F.3d at 240 (citing *Zayed*, 368 F.3d at 906). But the *Zayed* court's assertions on this point were grounded in the text of § 1421(c). *See* 368 F.3d at 906. The point that court was making was that when an application for naturalization is denied, § 1421(c) makes judicial review available only for "such" denial. *See id.* (citing *Apokarina v. Ashcroft*, 232 F. Supp. 2d 414, 416 (E.D. Pa. 2002)). This is the same point the Ninth Circuit would later make in *De Lara Bellajaro v. Chertoff*, based at least in part on its observation that when an application for naturalization is denied, § 1421(c) makes judicial review available only for "such" denial. 378 F.3d at 1046 (quoting § 1421(c)). I am unconvinced that this reasoning necessarily applies to § 1447(b), which, rather than merely authorizing judicial review of a particular agency decision, vests courts with the power to grant or deny an application in the first instance. *See Etape*, 497 F.3d at 387.

district court's options under § 1447(b) are not limited to merely remanding an application with instructions to the executive branch. On the contrary, § 1447(b) empowers the court to "determine the matter" of the application.[9] *See Etape*, 497 F.3d at 387.

Nothing in the text of § 1429 bars the court from exercising this authority. And while some courts have entertained the possibility that Congress meant to constrain not only the Attorney General, but the courts as well, this assumption is at odds with what Congress actually did. The fact is, § 1429 used to bar courts from hearing naturalization petitions while removal proceedings were under way; that statutory bar was on the books for decades, but Congress effectively deleted it. *See Yith*, 881 F.3d at 1162.

A court's first obligation is to interpret the statutes as they are written. In this context, I must presume, as the Supreme Court has time and again admonished, that "a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). Here, Congress has enacted legislation that expressly restricts the Attorney General's power to consider a naturalization application while removal proceedings are

---

[9] This conclusion – that a district court may approve or deny a naturalization application under § 1447(b) – might, at first, seem difficult to square with § 1421(a), which endows the Attorney General with "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a). In fact, though, there is no conflict. The decision to approve a naturalization application is not the final step in the naturalization process. *See generally* U.S. Citizenship and Immigration Services, A Guide to Naturalization 31-38 (2016), *available at* https://www.uscis.gov/sites/default/files/files/article/M-476.pdf. Typically, the process concludes with the recitation of an oath of allegiance (which may be administered either by USCIS or by a court, provided DHS has certified the alien as eligible for naturalization) and with USCIS's issuance of a certificate of naturalization. *See* § 1421(b), (d). If, as this Court's opinion contemplates, a district court exercising its jurisdiction under § 1447(b) were to approve a petitioner's application, there would be nothing to prevent the Attorney General (or, rather, the Secretary of Homeland Security) from administering these final steps in the process. Section 1429, certainly, would pose no barrier, as this provision merely bars the Attorney General from "consider[ing]" an "application for naturalization." 8 U.S.C. § 1429.

pending. 8 U.S.C. § 1429. The statute does not restrict the courts' power in a comparable fashion, and I decline to construe it as though it did.

c.

Defendants have argued there is no need for this Court to wrestle with the statutes at issue here because the Fourth Circuit has already done so. They interpret that court's opinion in *Barnes v. Holder*, 625 F.3d 801 (4th Cir. 2010), as holding that § 1429 precludes a district court from exercising its authority under § 1447(b) while removal proceedings are under way. *See* Defs.' Reply 2, ECF No. 14. I disagree.

The appellant in *Barnes* already was in removal proceedings when he applied for naturalization. *See* 625 F.3d at 802. He sought to terminate the removal proceedings under 8 C.F.R. § 1239.2(f), a regulation that protects aliens who are eligible for naturalization and can demonstrate "exceptionally appealing or humanitarian factors" weighing against their removal. 8 C.F.R. § 1239.2(f). The immigration judge ("IJ") stayed the proceedings to give DHS time to decide whether to naturalize him, but the agency never interviewed him, and the IJ eventually issued a removal order. *See* 625 F.3d at 803. Barnes appealed to the Board of Immigration Appeals ("BIA"), arguing, among other things, that he was entitled to relief under § 1239.2(f). *See id.* The BIA, drawing on its earlier decision in *In re Hidalgo*, 24 I. & N. Dec. 103 (BIA 2007), dismissed the appeal, holding that the IJ could not have terminated the proceedings under § 1239.2(f) because DHS had not attested that Barnes was eligible for naturalization, *see* 625 F.3d at 803.

Among the arguments Barnes raised on appeal to the Fourth Circuit was a contention that the BIA's decision effectively deprived him of his rights under § 1421(c) and § 1447(b). The Fourth Circuit disagreed. In a section of its opinion addressing § 1421(c), the court reasoned that

a "harmonious reading of [that provision] and § 1429 leads to the conclusion that an alien has a statutory right to review of his naturalization application, unless he is in removal proceedings." 625 F.3d at 806. Citing *Zayed* (a leading case on the interplay between § 1421(c) and § 1429), the court declared: "Because, under § 1429, an alien in removal proceedings does not have a right to have his application adjudicated, it follows that he cannot possibly have a right to have the adjudication judicially reviewed." *Id.* (citing *Zayed*, 368 F.3d at 906).

Defendants make much of this language, citing it several times in their briefs. *See* Defs.' Mem. 6; Defs.' Reply 1, 2. A careful reading, though, makes plain that the statement does not support their position here, because it does not concern a court's authority under § 1447(b), the statute Mr. Dilone has invoked. Rather, the *Barnes* court was addressing an applicant's right to "have the adjudication *judicially reviewed*," *Barnes*, 625 F.3d at 806 (emphasis added), a clear invocation of the district courts' authority to review a denial under § 1421(c).[10] The court's point, in this regard, was entirely logical and not especially remarkable. It was, simply, that so long as removal proceedings remained pending, DHS could not render a decision on Barnes's application, and without a DHS decision, there would be nothing for a district court to review under § 1421(c).

The *Barnes* Court confined its discussion of § 1447(b) to a footnote. *See* 625 F.3d at 807 n.6. There, the full extent of its analysis was as follows:

> As discussed above, due to the pendency of removal proceedings against him, Barnes had no statutory right to adjudication of his application. In any event, § 1447(b) did not apply here because DHS never held an examination for Barnes's naturalization application. Barnes does not argue that he would be entitled to

---

[10] Context, as always, is critical. While Defendants insist that the *Barnes* court's statement about the availability of judicial review is somehow relevant to Mr. Dilone's § 1447(b) claim, it must be observed that the Fourth Circuit situated the statement in a string of paragraphs about § 1421(c). *See Barnes*, 625 F.3d at 806-07. I also note that, in support of the statement, the court cited to two cases expressly concerning § 1421(c). *See id.* (citing *Zayed v. United States*, 368 F.3d 902, 906 (6th Cir. 2004), and *De Lara Bellajaro v. Shiltgen*, 378 F.3d 1042, 1047 (9th Cir. 2004)).

> compel the scheduling of an interview. Therefore the [BIA's] *Hidalgo* interpretation did not deprive Barnes of a right under § 1447 because, even if the IJ had cancelled removal proceedings, no such right would have been triggered in Barnes's case.

*Id.*

Defendants highlight the panel's statement that Barnes "had no statutory right to adjudication of his application," interpreting this to mean that a *district court* could not adjudicate his application. *See* Defs.' Reply 3. As I read the footnote, though, it does not appear to me that the panel was contemplating the district court's power to "determine the matter" under § 1447(b), as Mr. Dilone has urged this Court to do here. What the panel was addressing, rather, was Barnes's argument that the BIA had denied his "right to *compel a decision*." 625 F.3d at 807 n.6 (emphasis added) (quoting Barnes's appellate brief). The question, in other words, was whether Barnes was entitled to an opportunity to seek a district court order compelling DHS to adjudicate his application. In answering this question, the Fourth Circuit merely noted the obvious, which was that an order to that effect would violate § 1429 and would therefore have been impermissible.

Ultimately, any debate about the meaning of the statement I have just discussed is academic, because the very next sentence in the footnote explains that § 1447(b) "did not apply" under the circumstances in *Barnes*. *See id.* Barnes could not have invoked a district court's jurisdiction under § 1447(b) because, unless and until DHS examined him, the 120-day period that must precede a petition for relief under the statute would not start to run. *See* 8 U.S.C. § 1447(b); *Manzoor v. Chertoff*, 472 F. Supp. 2d 801, 806 (E.D. Va. 2007). DHS had yet to conduct an examination in Barnes's case, and as Barnes had not identified a way of compelling the agency to do so, the panel could not conclude that the BIA's decision had deprived him of the chance to seek relief under § 1447(b). *See Barnes*, 625 F.3d at 807 n.6.

This case presents an entirely different set of circumstances. Here, DHS did conduct an examination of Mr. Dilone, and there is no dispute that DHS failed to grant or deny Mr. Dilone's naturalization application within 120 days of doing so. *See* Mot. to Dismiss 1. Mr. Dilone then properly invoked the Court's jurisdiction under § 1447(b). Nothing in the statutory text or in the case law persuades me that DHS's subsequent decision to place him in removal proceedings left the Court powerless to act on the petition.

3.

I have concluded that this Court retains jurisdiction over Mr. Dilone's Complaint under § 1447(b) and is authorized to order relief under the statute. What remains to be decided is how this case should proceed.

Section 1447(b) states that a court exercising its authority under this statute "may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter." 8 U.S.C. § 1447(b). I have already explained, though, that the latter option is unavailable under the present circumstances, because an order directing USCIS to adjudicate Mr. Dilone's application would be in conflict with § 1429. That leaves the first option. Taking that path, it would seem that the appropriate next step, were this case to proceed, would be to schedule a hearing to assess Mr. Dilone's entitlement to naturalization.

But such an approach presents its own problems. First, I note that the law requires an applicant for naturalization to establish his "good moral character." 8 U.S.C. § 1427(a). Generally, in making this determination, DHS is authorized to "take into consideration . . . the applicant's conduct and acts at any time," including prior to the five-year period preceding the submission of his application. *Id.* § 1427(e). Here, DHS has alleged that Mr. Dilone is removable on the basis of crimes he committed after arriving in the United States. *See* Notice to Appear 5.

An agency determination on his removability would no doubt be of value in assessing his moral character, *see* 8 U.S.C. § 1101(f)(3) (discussing criminal activities that preclude a finding of "good moral character"); 8 C.F.R. § 316.10(b), and while the Court could render an assessment without it, I see some practical benefit in waiting for the agency expeditiously to complete its work.

Even more than that, though, I agree that following the literal text of the statutes at issue here could produce results that are inconsistent with what Congress may well have intended when it amended sections 1421 and 1429, among other portions of the federal immigration laws, in 1990. *See Zayed*, 368 F.3d at 905. The Sixth Circuit articulated this concern in *Zayed*, writing:

> Although courts . . . are generally well advised to be cautious about letting the actual language of a statute be trumped by an unarticulated congressional intent, we have some sympathy for the district court's conclusion as to what Congress intended when it changed the law in 1990. The history of the Immigration Act of that year does suggest that Congress intended removal proceedings to have priority over naturalization proceedings.

*Id.*

As a "general rule," a court should not "look beyond the unambiguous language of a statute." *Yith*, 881 F.3d at 1161. It is for this reason, primarily, that I have concluded that § 1429 does not preclude Mr. Dilone's claim for relief here. I recognize, though, that proceeding with this case while removal proceedings are pending does, in effect, restart the "race" that Congress sought to end when it gave removal proceedings priority over naturalization adjudications in 1950. *See Shomberg*, 348 U.S. at 544. This strikes me as an inevitable consequence of the 1990 amendment, but it is hard to rule out the possibility that it is an *unintended* consequence, and that possibility ought to give a court pause.

Under these circumstances, I am inclined to stay these proceedings to give DHS time to complete Mr. Dilone's removal proceedings, provided they do so expeditiously. *See Klene*, 697

F.3d at 668 ("If some other pending proceeding must be completed before a court can resolve the merits, usually the court should stay the suit . . . ."). This Court will retain exclusive jurisdiction over the naturalization application while the stay is in effect. *See Etape*, 497 F.3d at 383. The parties will be required to provide the court with a status report every 45 days, and I reserve the option of reopening the proceedings at any time, particularly if the agency fails to complete the proceedings in a timely fashion. This approach seems consistent with the purpose of § 1447(b), which is to "prevent undue delay." *Yith*, 881 F.3d at 1164; *see Hovsepian*, 359 F.3d at 1163.

## CONCLUSION

Defendants have not persuaded me that § 1429 strips this Court of its jurisdiction over this case or otherwise precludes the Court from granting the relief Mr. Dilone seeks. Their motion to dismiss Mr. Dilone's petition is therefore denied. Nevertheless, because I question whether Congress intended to abandon the longstanding policy of barring courts from naturalizing aliens while removal proceedings are pending, I am staying this case to allow the removal proceedings to run their course.

A separate order follows.

Date: February 1, 2019

Paul W. Grimm
United States District Judge